GARDNER *vs.* SMITH.

A receiver may maintain an action against the judgment debtor, of whose property he is appointed receiver, for a conversion thereof, where the debtor has converted the same after it became vested in the receiver.

But for a refusal to surrender a mere possession, to which neither the debtor nor the receiver has any legal right, and which the debtor holds only by sufferance, no action will lie by the receiver.

Where a judgment debtor, at the time of the appointment of a receiver of his property, is in possession of personal property upon which he has given a mortgage to the former owner, to secure the purchase money, which mortgage is then in force, but the receiver neglects to pay it off when it becomes due, and suffers the right of the mortgagee to become absolute, he cannot, after a demand of the possession of the debtor, and refusal, maintain an action against the latter, for a conversion of the property.

Where, in an action of that nature, the defendant alleges, in his answer, that he was not, at the time of the alleged conversion, the owner of the property, the mortgage so given by him, upon the property, is admissible in evidence, in support of that defense; notwithstanding the objection that a true copy thereof was not filed, with a statement exhibiting the interest of the mortgagee, in the property, according to the statute, and that it is consequently void as against the creditors of the mortgagor.

APPEAL from a judgment entered upon a verdict. The action was brought by the plaintiff as receiver, to recover for an alleged conversion of a *house,* and was tried at the Steuben circuit in November, 1856. By the evidence it appeared, that on the 19th June, 1851, F. W. Morrow recovered a judgment against the defendant before a justice of the peace, for $93.28, and that it was docketed in the clerk's office June 25th, 1851. That on the 19th May, 1852, upon affidavit, an order for the examination of the defendant was made. That upon the proceedings thus instituted the plaintiff was appointed receiver, by order made August 4th, 1852. A bond. was made by him as receiver, and filed 13th August, 1852. That Asem Eddy erected the building in question upon land claimed by one Goodsell, with the consent of the latter, and sold the building to the defendant in 1851 or 1852. That in June, 1854, the plaintiff called upon the defendant and demanded the house, who " said he had concluded not to let

him have it." The plaintiff proved the value of the house, and rested. The defendant moved for a nonsuit, which was denied. He then offered in evidence a chattel mortgage given by him to Asem Eddy upon the building, to secure the purchase money therefor. This mortgage was as follows:

"This indenture made between Clark L. Smith of Hornby, in the county of Steuben, of the first part, and Asem Eddy of the town of Hornby in the county of Steuben, of the second part, witnesseth : that whereas the said party of the first part is indebted to the said party of the second part in the sum of fifty dollars. Now therefore, for the purpose of securing said debt of fifty dollars and interest to the party of the second part, the said party of the first part does hereby sell, transfer and assign to the said party of the second part, all the property described in the following schedule, to wit : a building now used by said party of the first part for a shoe shop, said building is situated upon a piece of land near the bridge across Dry run at Hornby Forks, said building is upon the west side of the highway. Provided, that if the said party of the first part shall pay to the said party of the second part the sum of fifty dollars with interest as follows : fifty dollars to be paid the first day of January, 1853, then this transfer to be void and of no effect whatever, but in case of non-payment as above mentioned, the said party of the second part shall have full power to take possession of said property, to sell the same, and apply the avails in payment of the above debt ; and in case the said party of the second part shall at any time feel unsafe it shall be lawful for the same to take possession of the property, and to sell the same at public or private sale, previous to the time above mentioned for the payment of said debt, applying the proceeds as aforesaid, after deducting all expenses of sale, and of the keeping of said property."

This mortgage was dated April 13, 1852, and was filed in the town clerk's office, on the same day. It was excluded by the court, on the ground that the omission to refile a copy of the mortgage within a year rendered it invalid as against the

plaintiff. The plaintiff recovered the value of the property, and interest.

*Geo. B. Bradley,* for the appellant. (Points not noticed by the court, omitted.)   I. The motion for nonsuit was well made, and ought to have been granted.   (1.) The plaintiff, as receiver, had no right or authority at common law to sue, and has no such right or authority now, except in the cases provided by chapter 112 of the Laws of 1845, and the rules of this court. (2 *R. S. 4th ed.* 238, § 11.   *Voorhies' Code, 2d ed.* 86.   *Seymour* v. *Wilson,* 16 *Barb.* 294.   *Hayner* v. *Fowler, Id.* 300. *McKillip* v. *McKillip,* 8 *id.* 552, 555.   *Mann* v. *Pentz,* 3 *Comst.* 415, 422.   *Wilson* v. *Wilson,* 1 *Barb. Ch.* 592, 594.) This action not falling within the cases prescribed by such statute and rules, is brought without authority and cannot be sustained.   (*Sess. Laws of* 1845, *ch.* 112.   *Sup. Court Rule,* 76.)   The case of *Porter* v. *Williams,* (5 *Selden,* 142,) is not applicable.   That was not an action against the judgment debtor, nor upon a claim accruing subsequent to the appointment of the receiver, but was a case in which the right of action was given by section 299 of the code.   Nor is the case of *Wilson* v. *Allen,* (6 *Barb.* 542,) as decided, in point here. That was not a case against the judgment debtor of whose property the plaintiff was appointed receiver.   It is insisted, however, that that case did not come within the cases provided for by the act of 1845, and that the decision is no authority upon that question, because the point was not there made.   The case of *Gillet* v. *Fairchild,* (4 *Denio,* 80,) has no application. The right of action in that case was speedily given by part 3, chapter 7, title 4, article 3, § 75, and part 3, chapter 5, title 1, article 8, § 7, R. S.   The cause of action therein accrued before appointment of receiver, and thereby passed to him and was against a third person.   The act of 1845 provides that a "receiver may sue in his own name for any debt, claim or demand transferred to him or to the possession and control, of which he is entitled as such receiver."   This action is not

Gardner *v.* Smith.

brought for a debt, claim or demand *transferred* to the receiver by his appointment, nor is it brought for a debt, claim or demand, to the possession and control of which he as such receiver was entitled. The receiver, by virtue of his appointment, being entitled to the possession and control of the property of the judgment debtor, thereby got no right of action, but had the remedy which the law afforded him, to wit : he might compel him to deliver by order of the court or punish for contempt on his refusal. (*Code,* § 294, *&c. Noe* v. *Gibson,* 7 *Paige,* 513. *Parker* v. *Browning,* 8 *id.* 388. *Albany City Bank* v. *Schermerhorn,* 9 *id.* 372.) The receiver is a mere instrument, or officer of the court, having no authority except that conferred upon him by the court and the statute. And a disobedience of the judgment debtor to the proper demands of the receiver is a contempt of the court, but no right of action thereby accrues to the receiver. If the court had the power to confer authority on the receiver to bring an action like the one in question, it did not exercise it in this case. (2.) It did not appear upon the trial that an execution had been issued upon the judgment in question, and returned unsatisfied in whole, or in part, and for that reason the plaintiff should have been nonsuited. It was as necessary to show this fact as that a judgment had been rendered. The affidavit upon which the order for examination of the judgment debtor was made, was no proof upon the trial, of the fact of the issuing and returning the execution; a necessary fact to confer jurisdiction to make the appointment of the receiver. The code does not provide for appointment of receivers upon such affidavit, &c. (§ 298.) The fact that a judgment exists, and that an execution thereon has been issued and returned unsatisfied in whole or in part, must be made to appear like any other facts upon the trial, to show jurisdiction and authority to make appointment. The statute does not provide that affidavits shall give jurisdiction. (*Code,* § 392.) The court expressly held that the indorsement upon certificate of issuing execution was no proof thereof. It does not appear by the

Gardner *v.* ·Smith.

affidavit that execution was issued upon the judgment, after it was docketed in the county clerk's office. (3.) The house in question was not personal property so as to render it the subject of an action of trover, and for that reason the plaintiff should have been nonsuited. The agreement between Eddy and Goodsell, who claimed possession of the land, conferred but a personal right or license on Eddy to remove the same, which was extinguished by the sale to defendant. The defendant was the only person in possession of the land at time of demand and of commencement of this action, in whom title thereto would be presumed to be. The title to land and to the building being in same person, the latter would be merged in former. The agreement giving Eddy the right of removal of the house did not render it personal property in the absolute sense, but was part of the realty, with a right or license to remove or sever it. And until the right should be exercised, it continued to savor of the realty, so that it could not be the subject of an action of trover. (*Ferard's Law of Fixtures*, 2d ed. 77, 79, 87, 88, 173, 232, 233, [*marg. p.* 103, 106, 117, 215, 297, 277.] *Elwes* v. *Mawe*, 3 *East*, 50. *Hallin* v. *Runder*, 1 *Cr. M. & R.* 275. *Ex parte Quincy*, 1 *Atk.* 478. *Reynolds* v. *Shuler*, 5 *Cowen*, 323, 328.) Things attached to the freehold by the tenant could not be distrained for rent although he had the right to remove them. (*Reynolds* v. *Shuler*, *sup.*) The title of Eddy to the building was not absolute, but depended upon the condition that he removed it. A mere license is not transferable. (4.) It did not appear by the evidence that Goodsell had title to, or possession of the land on which the building was erected, without which his agreement would afford no right to remove it.

.II. The court erred in excluding the chattel mortgage offered in evidence by the defendant. (1.) The validity of the debt it was given to secure, the good faith in which it was given, and the execution thereof, were duly proved. It bore date April 13, 1852, and was duly filed that day, more than one month before the supplementary proceedings were instituted, and nearly four months before the receiver was appointed.

The legal title to the property was by said mortgage passed to and vested in Eddy, the mortgagee. (*Mattison* v. *Baucus*, 1 *Comst*. 295.) (2.) This mortgage then, at the time the plaintiff was appointed receiver, was a legal and valid one, and Eddy, by virtue thereof, then had the legal title to said property as against every body. And the receiver got no property or rights by his appointment except such as the defendant had at that time. (*Caton* v. *Southwell*, 13 *Barb*. 335, 337. *Browning* v. *Bettis*, 8 *Paige*, 568. *Voorhies' Code*, 4th ed. 456, n. i.) (3.) The court excluded the evidence, on the sole ground that a copy of the mortgage not having been refiled within the year, (although the year expired long after the appointment,) it ceased to be of validity, and the rights which might by statute be available to subsequent purchasers &c., by such omission, accrued to the plaintiff. In this the learned justice erred, because; no right or title could accrue to the plaintiff, except that which vested in him at the time of his appointment, and then no greater than the defendant himself had. The mortgage being valid, as against every person, at the time the property and rights of the defendant vested in the plaintiff, it was not rendered invalid as against the plaintiff by the subsequent omission to refile. Such omission could only enure to the benefit of those who acquire their right after the expiration of the year. (*Meech* v. *Patchin*, 4 *Kern*. 71. *Hill* v. *Beebe*, 3 *id*. 556.) (4.) The evidence was competent to show title and right out of the plaintiff, and also out of the defendant, and in another by whose permission the defendant had possession. (*Schermerhorn* v. *Van Volkenburgh*, 11 *John*. 529. *Rotan* v. *Fletcher*, 15 *id*. 207. (5.) The evidence was competent at least in mitigation. (6.) The fact that the defendant omitted to state any ground of refusal at time of demand is no *estoppel*. It is only when a party states a ground of refusal, that he will not be permitted to assert another or different one. (*Everett* v. *Coffin*, 6 *Wend*. 603.) (7.) The title or right of the plaintiff to the property was in issue by the pleadings. And if the evidence offered would be in miti-

gation, it would not only be unnecessary but improper to make it a subject of pleading.

*Wm. Irvine,* for the respondent.    I. As to the power of the receiver, in the premises, see *Act of April* 28, 1845, *ch.* 112, *p.* 90, § 2 ; *Wilson* v. *Allen,* (6 *Barb.* 542 ;) *Gillet* v. *Fairchild,* (4 *Denio,* 82 ;) *Brouwer* v. *Mills,* (1 *Sandf. R.* 629.)

II. The mortgage was properly excluded.    The receiver stood in the place of the creditor, as a representative enforcing the rights of the creditor under the direction of the court. (1.) It was not admissible under the answer.    (2.) The omission to file the statement made the mortgage void as to creditors.

*By the Court,* JOHNSON, J.    I am satisfied, upon a careful consideration of this case, that the chattel mortgage, offered by the defendant in evidence, ought to have been received. It was proved to have been given to secure the purchase money of the property in question, and taken by the mortgagee in good faith.    The defendant, in one of his answers, alleged that he was not, at the time of the alleged conversion, the owner of the property.

It is to be assumed, for the purposes of this question, that the mortgage was a valid subsisting one, at the time the plaintiff received his appointment.

This being so, what interest did the plaintiff take, by virtue of his appointment?    He took only the interest which the defendant then had, which was the mere equity of redemption.    Eddy, the mortgagee, had the legal title, and the defendant the right to acquire it by paying off the mortgage. The mortgage, it will be seen, by its terms, gave the defendant no right to the possession of the building for any definite period of time, but the mortgagee might take possession, and sell at any time before the day of payment, when he should feel unsafe.    The defendant, therefore, had no legal property in the building, conceding it to be personal property, as it

Gardner *v.* Smith.

undoubtedly was, from the evidence in the case, but a mere equitable right. This right was not the subject of sale upon execution; (*Mattison* v. *Baucus,* 1 *Comst.* 295;) and if an action could be maintained for the conversion of such an interest as the defendant had in the property, what measure of damages could the plaintiff recover? The demand by the plaintiff, and the refusal by the defendant, upon which this action was brought, was about the first of June, 1854, nearly a year and a half after the title of Eddy, under the mortgage, had became absolute, at all events as against the defendant, and of necessity against all others standing in his shoes, also. The plaintiff, it seems to me, beyond all doubt stood exactly in the defendant's shoes, in respect to this mortgage. He took all the interest the defendant had in the property, and no more, the day he filed his bond, as receiver, which related back to the day of his appointment, on the 4th of August, 1852, which was before forfeiture, and while the mortgage was good against all the world. At any time before the first of January, 1853, before the mortgage debt became due, he might have paid it off, and vested the whole legal title in himself. But he had neglected to do so, and consequently the right of the mortgagee had become absolute, as against the plaintiff, long before he made a demand of the defendant. Neither the defendant nor the plaintiff had any interest in the property which could be the subject, legally speaking, of a conversion, when the demand and refusal occurred.

The mortgage was excluded as evidence, on the ground that a true copy was not filed, with a statement exhibiting the interest of the mortgagee in the property, according to the statute, and that it was consequently void as against the creditors of the mortgagor. But the plaintiff was not a creditor, nor did he represent one, within the contemplation of the statute, as respects this mortgage, at the time the demand was made of the defendant. He occupied the position of the mortgagor; and the mortgagee was no more bound to keep a copy and statement filed as against him, than he was against

the mortgagor himself. The interest of the mortgagor had, by virtue of the appointment of the receiver, been applied to the benefit of the creditors, or transferred to the receiver for the creditors' benefit, so that the defendant had been entirely divested of it; and if it was of any value the creditors lost the benefit of it, through the neglect and default of the receiver.

The creditor had no farther right or claim upon that property. His remedy in respect to it had been exhausted, and he was no longer a creditor of the defendant as regards that property. The statute makes the mortgage void where a copy and statement is not filed as therein prescribed, as against such creditors only as have not enforced their remedy against the mortgagor's interest in the mortgaged property. After the rights of the creditor, in pursuing his remedy, had become fixed and certain as between him and the mortgagee, they could not be enlarged by any subsequent neglect of such mortgagee, although they might become forfeited by his own neglect to redeem. (*Hill* v. *Beebe*, 3 *Kern.* 556. *Meek* v. *Patchin*, 4 *id.* 71.) But suppose the action can be maintained, all the plaintiff can recover is, the value of the interest he had in the property at the time of the alleged conversion, which was, if any thing, but the value of the right of redemption. The defendant had set up in his answer that he was not the owner of the property, and I do not see why, in any view of the case, he was not entitled to the evidence in mitigation of damages. But, I confess, there seems to me much graver difficulties in the case than this.

The defendant has not interfered with the plaintiff's right of redemption in any respect, so far as the evidence shows. He has not converted or destroyed that right, even if it were a subject of conversion for which an action at law would lie. All he has done is to refuse to surrender a mere possession, to which neither he nor the plaintiff had any legal right, and which he held only by sufferance.

I entertain no doubt of the right of a receiver to maintain an action against the judgment debtor where he has really

converted the property after it has become vested in such receiver, either by sale or destruction, so that no delivery can be made. It is well settled that he may maintain it against a stranger, and I see no reason why he may not against the debtor himself. (*Wilson* v. *Allen*, 6 *Barb.* 542. *Gillet* v. *Fairchild*, 4 *Denio*, 82. *Brouwer* v. *Hill*, 1 *Sand.* 627. *Porter* v. *Williams*, 5 *Seld.* 142.)

I think the ruling at the circuit was right upon all the points raised, except the exclusion of the mortgage.

The judgment must be reversed, and a new trial ordered, with costs to abide the event.

[MONROE GENERAL TERM, September 6, 1858. *Welles, Smith* and *Johnson,* Justices.]

THE PEOPLE, *ex rel.* John Keenholts, executor, &c. *vs.* A. D. ROBINSON, Albany county judge, and others.

Where, after the issuing of a common law certiorari to remove into the supreme court for review, proceedings had before referees appointed by a county judge to hear and determine an appeal from the order of commissioners of highways laying out a private road, the relator dies, leaving a will by which she appoints an executor, and authorizes him to control and manage the real estate devised, during the minority of the devisees, and " to receive the rents, issues and profits thereof," and apply them for certain specified purposes, the executor is the trustee of a valid active trust, and as such has the legal title and an actual estate in such real estate ; and is the proper person to continue the proceedings upon the certiorari, as relator, in the place of his testatrix.

An appeal does not lie to the county judge, from the decision of a jury summoned upon the application of commissioners of highways, determining that a *private road* applied for is necessary, and assessing the damages of a land owner.

Consequently the county judge has no power to appoint referees to hear and determine an appeal of that nature.

COMMON law certiorari, issued by the supreme court, on the application of Mary Keenholts, to A. D. Robinson,